IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| MCGUIRE MEMORIAL, | ) |
| | ) |
| | )   2:25-CV-00241-MJH |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TEAMSTERS LOCAL 261, | ) |
| INTERNATIONAL BROTHERHOOD OF | ) |
| TEAMSTERS, | |
| | |
| Defendant, | |

OPINION AND ORDER

Defendant, Teamsters Local 261, International Brotherhood of Teamsters, removed the within action wherein, Plaintiff, McGuire Memorial, seeks to void a labor arbitration award. (ECF No. 2-2). Teamsters now move to dismiss McGuire's Complaint, Teamsters has also filed a Counterclaim to confirm and enforce said labor arbitration award, and McGuire has filed an Answer thereto. (ECF Nos. 10 and 11). In its response to Teamsters's Motion to Dismiss, McGuire appears to move for remand to the Beaver County Court of Common Pleas. (ECF No. 16). These matters are now ripe for decision.

Following consideration of McGuire's Complaint (ECF No. 2-2), Teamsters's Motion to Dismiss and Counterclaim (ECF Nos. 10 and 11), the parties' respective briefs and replies (ECF Nos. 12, 15, 16, and 19), and for the following reasons, McGuire's Motion for Remand will be denied, and Teamster's Motion to Dismiss will be denied.

I.   Background

Teamsters (or the Union) represents a bargaining unit of employees, who work for McGuire. (ECF 2-2 at ¶3). McGuire is a private, non-profit entity, which provides educational

and residential services for individuals with intellectual and physical disabilities ("client(s)"). *Id*. at ¶¶1, 2, 4. Teamsters and McGuire are parties to a Collective Bargaining Agreement ("CBA"), which governs terms and conditions of employment for a bargaining unit of employees, represented by Teamsters, who work at McGuire.

Article 9 of the CBA, titled "Grievance Procedure," provides for a comprehensive contractual dispute resolution procedure culminating in arbitration that "shall be final and binding upon both the Employer and the Union." (ECF No. 11-1 at p. 8).  Article 3 of the CBA, titled "Management Rights," provides McGuire discretion in "hiring, suspending or discharge for just cause, laying off, recalling, promoting, demoting, assigning or transferring of its employees" as well as "the interpretation of [regulations by government authorities]." *Id*. at p. 3.  Article 10 of the parties' CBA, titled "Discipline & Discharge," provides McGuire's right to discipline employees. More specifically, Article 10 provides in pertinent part, "[n]o employee shall be disciplined, suspended or discharged without just cause." *Id*. at p. 9.  Neither Article 3, Article 10, nor any other provision of the CBA, defines the terms suspension or just cause.

McGuire's Complaint seeks to vacate a December 5, 2024 arbitration award issued by neutral arbitrator Marc. A. Winters.  (ECF No. 11-2). Said arbitration involved employee, Judy DeMatteo, who had been suspended, pending an investigation into alleged abuse of a McGuire client.  Ms. DeMatteo's suspension was ultimately lifted when the investigation concluded that the allegations were unfounded.  *Id*.   Before she was reinstated, Ms. DeMatteo missed six scheduled overtime shifts. *Id*.   Upon her reinstatement, McGuire agreed to pay Ms. DeMatteo backpay for the five regular shifts; however, McGuire refused to pay Mrs. DeMatteo for six previously scheduled overtime shifts. *Id*.

On Ms. DeMatteo's behalf, the Union filed a grievance, challenging McGuire's decision as violating the parties' CBA and requesting McGuire to pay Mrs. DeMatteo for the missed overtime shifts. Following the grievance procedures, the Union demanded arbitration. *Id*. Consistent with Article 9 of the parties' CBA, the parties jointly selected Marc A. Winters to serve as the neutral arbitrator to hear and decide the dispute. (ECF No. 11-2). On August 30, 2024, the Union and McGuire participated in an arbitration hearing pursuant to the CBA. *Id*. On December 5, 2024, after considering the evidence and testimony presented at the arbitration hearing and the parties' post-hearing briefs, Arbitrator Winters issued his final and binding Opinion and Award. *Id*. Arbitrator Winters concluded that McGuire, lacked just cause to suspend Ms. DeMatteo, which violated the CBA; therefore, he sustained the Union's grievance. *Id*. As a remedy, Arbitrator Winters ordered McGuire to make Ms. DeMatteo whole and compensate her for the six overtime shifts she missed during the period of her suspension. *Id*. Arbitrator Winters based his Award upon his finding that McGuire failed to demonstrate just cause for discipline under Articles 3 and 10 of the CBA. *Id*.

II.   Motion for Remand

Teamsters removed this action from the Court of Common Pleas of Beaver County on the basis of original jurisdiction (28 U.S.C. § 1331). Teamsters maintains that this Court has jurisdiction pursuant to the Labor Management Relations Act (LMRA) (29 U.S.C. § 185), because any state law claims in McGuire Memorial's Complaint are preempted by federal questions of law. McGuire Memorial contends that this case should be remanded, because the subject grievance does not require an interpretation of the collective bargaining agreement (CBA) between the parties. Specifically, McGuire Memorial argues that the arbitrator prioritized the provisions of the CBA over state regulatory provisions mandating McGuire to,

3

pending investigation, restrict all patient contact by an accused employee and to investigate when complaints are made that an employee allegedly abused a client.

As regards jurisdiction, the LMRA Section 301 provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that 29 U.S.C. § 185(a) preempts state law claims and confers federal subject matter jurisdiction over disputes concerning the interpretation of collective bargaining agreements: "[Section] 301 pre-empts state law ... insofar as resolution of the state law claims require[s] the interpretation of a collective bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 n. 8, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). The "dispositive question" for LMRA preemption is "whether [plaintiff's] state claims require any interpretation of a provision of the CBA." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 256 (3d Cir. 2004).

Here, McGuire Memorial's Complaint seeks to void the Winters Award, which was issued under grievance procedures set forth in Article 9 of the CBA. (ECF Nos. 11-1 amd11- 2). The pleadings do not support that Plaintiff ever challenged the arbitrability of the grievance, and the relevant record indicates full participation in the arbitration.  (ECF No. 11-2; ECF No. 11, ¶¶ 14-17; and ECF No. 15 at ¶¶ 14-17). At arbitration, Arbitrator Winters's decision rested upon his finding that McGuire violated the "just cause" discipline provisions of CBA Articles 3 and10. (ECF No. 11-2 at p. 4).  Therefore, McGuire Memorial's claim, that interpretation of the CBA is not necessary, is unavailing.  The crux of the Complaint requires the Court to examine and

analyze the parties' CBA.  Thus, LRMA Section 301 serves as a basis for this Court to maintain jurisdiction.

Accordingly, McGuire Memorial's Motion for Remand will be denied.

III.     Motion to Dismiss

Teamsters argues that McGuire Memorial has failed to state a claim, because the Complaint does not allege that the dispute was not arbitrable, or that the arbitrator's award did not draw its essence from the CBA, or that the arbitrator's award was not rationally derived from the CBA.  McGuire Memorial contends that the Arbitrator erred by allowing the CBA's just cause provisions to predominate over the Pennsylvania regulatory requirements that govern how McGuire Memorial was mandated to respond to client abuse allegations.

"The sine qua non of judicial review of an arbitration award is a heavy degree of deference to the arbitrator." *Akers Nat'l Roll Co. v. United Steel*, 712 F.3d 155, 164–65 (3d Cir. 2013).  However, the Third Circuit has further held:

> But that deference is not unlimited. If it were, court review would be an oxymoron. Hence we will not "rubber stamp" an arbitrator's decision.  Rather, we will vacate an award "if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement." The Supreme Court has long made clear that an award must still "draw[ ] its essence" from the words of the collective bargaining agreement and the arbitrator may not "dispense his own brand of industrial justice." Further, an arbitrator must act within the scope of authority conferred him by the CBA.

*Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 199 (3d Cir. 2019).

Under Article 9 of the CBA, the parties have granted their chosen arbitrator the following authority, "[t]he arbitrator shall have jurisdiction and authority to interpret, apply or determine the compliance within the provision of this Agreement, but the arbitrator shall not have

jurisdiction or authority to add to, delete from or alter in any way the provisions of this [CBA]." (ECF No. 11-2 at p. 9).

Here, following review of the Arbitrator's decision, this Court concludes that the Arbitrator exceeded his authority vis-à-vis the provisions of the CBA. Arbitrator Winters's decision included the following analysis:

> This Arbitrator is not convinced by the Employer's argument. Under the parties Collective Bargaining Agreement in Article 3, Management Rights and in Article 10 Discipline and Discharge, the Employer cannot suspend an employee without having just cause. The regulatory authority and provisions cited and argued by the employer in this case does not alter, change or supersede the just cause provisions contained in the Collective Bargaining Agreement.
>
> Here, the Grievant was suspended pending an investigation. Once the investigation was concluded the suspension was reversed based on allegations that were unfounded and/or inconclusive and the employee was returned to work where the Employer compensated the Grievant for loss of wages for the shifts she regularly works.
>
> That is exactly how a just cause provision is interpreted when discipline is reversed or overturned and the Employer is required to make the employee whole for all losses.
>
> \*\*\*
>
> When a grievant is to be made whole means that the grievant is not to make more money than he/she was entitled to because of the discharge/suspension being reversed but not to lose income as well. A grievant is to be paid for all wage and benefit items the grievant would have earned but for their discharge/suspension minus any mitigation if applicable.
>
> The Grievant, in this case, did lose overtime opportunities she had prescheduled due to the suspension. McGuire Memorial, in this instance, is required to compensate the Grievant for the missed overtime that was prescheduled during the suspension for which the Employer reversed.

(ECF No. 16-4).  The above analysis is rife with conclusions that either misconstrue the CBA or insert provisions that are not within the CBA.

First, Article 3 of the CBA provides as follows:

6

## ARTICLE 3
## MANAGEMENT RIGHTS

### SECTION 1 - MANAGEMENT RIGHTS

Except to the extent expressly abridged by a specific provision of this Agreement it is expressly recognized that Management Rights include such rights, powers, authority and functions including but not limited to the full and exclusive control, management and operation of its facility; the determination or scope of its activities; the extent to which and means and manner by which its facility or any part thereof shall be operated, relocated, sold or shut down; the determination of the equipment to be acquired, the size and location of such facility and its buildings; the determination of schedules of work, and the rights to change such schedules; the determination of reasonable standards of the individual's care, including placement of an individual based upon the needs of the individual as identified by the Employer; the right to establish or change job classifications and job content or the right to abolish such jobs; the rights to introduce new or improved procedures or equipment; the right to make and enforce reasonable rules of conduct for the maintenance of discipline and to amend such rules; the right to require employees to cooperate during investigations during bi-annual physicals or where the Employer has reasonable cause to believe that the employee's job performance is impaired; determination of the number and the assignments of duties of personnel and the direction of its employees, including but not limited to hiring, suspending or discharge for just cause, laying off, recalling, promoting, demoting, assigning or transferring of its employees. The failure of this Agreement to specifically enumerate all management rights cannot be deemed a limitation on or waiver of such rights. The Employer agrees to meet and discuss with the Union prior to implementing any new rules, policies, practices, or procedures.

### SECTION 2-REGULATION BY GOVERNMENT AUTHORITIES

The parties acknowledge that various government agencies, such as the Pennsylvania Department of Public Welfare and the Office of Intellectual Disabilities, County Officers of Mental Health and Intellectual Disabilities, exercise extensive regulatory authority over McGuire Memorial. **Dealings with such governmental agencies, interpretation of the regulations, directives and standards and the means for compliance shall be the right of the Employer.**

Id. at p. 3 (Emphasis added).

The relevant state regulatory provisions set forth in 55 Pa.Code § 6100.402 provide as follows:

> **§ 6100.402. Incident investigation.**
>
> (a) The provider **shall** take immediate action to protect the health, safety and well-being of the individual following the initial knowledge or notice of an incident, alleged incident or suspected incident.
>
> (b) The provider **shall** initiate an investigation of an incident, alleged incident or suspected incident within 24 hours of discovery by a staff person

*Id*. (Emphasis added).

In addition to this regulation, the Pennsylvania Department of Human Services has further issued a bulletin from the Office Developmental Programs (ODP), which states in pertinent part as follows:

> **V. Response Upon Discovery/Recognition of an Incident**
>
> The provider and [Support Coordination Oraganization] SCO **must** take immediate action to protect the health, safety, rights, and well-being of the individual following the initial knowledge or notice of an incident, alleged incident, or suspected incident (55 Pa. Code §§ 2380.17, 2390.18, 6100.402, 6400.18, 6500.20).
>
> \*\*\*
>
> The provider's or SCO's point person **must** ensure separation of the victim from the alleged target(s). This separation shall continue until the investigation is completed.
>
> - When the alleged target is an employee, staff, volunteer, contractor, consultant, or intern of the provider or SCO, the target **shall not be permitted** to work directly with the victim or any other individual during the investigation process until the investigation determination is completed and corrective action(s) specific to the target are implemented (55 Pa. Code § 6100.46).

(ECF No. 16-2 at p. 12) (emphasis added). The regulation unequivocally requires that McGuire respond to a reported incident by separating the employee until an investigation determination. The regulatory requirement upon McGuire is clear, and CBA Article 3, Section 2 grants McGuire unfettered discretion as to the means to comply with government regulations. In this

case, McGuire suspended Ms. DeMatteo to comply with government regulations mandating an investigation and restricting contact with clients.

The Arbitrator erred when he determined that the just cause provisions in Articles 3 and 10 were not met, despite the Article 3 provisions, wherein McGuire was granted authority to interpret and determine means for compliance with state regulations. The cause for the employee's suspension was the regulation that required an investigation and no contact by the employee until completion of the investigation. The suspension had no connection with the outcome of the investigation.

The regulations clearly mandated McGuire to perform an immediate investigation in response to the reported abuse. The regulations also required McGuire to separate the employee from the victim and any other individuals during the investigation. CBA Article 3, Section 2 expressly acknowledged governmental agencies' "extensive regulatory authority over McGuire Memorial" and declared that interpretation of the regulations, directives and standards and the means for compliance shall be the right of McGuire Memorial. In this case, McGuire determined that the means for compliance with the governmental mandates was to suspend the employee pending completion of the investigation. The report of abuse and the governmental regulations established the necessity and reason cause for the suspension; and thus, the report and regulations were the basis upon which just cause should have been assessed under Article 3 of the CBA. When the Arbitrator determined that the inconclusive determination through the investigation defeated just cause, he erred. The Arbitrator disregarded the rights of management, as conferred by Article 3, when he erroneously applied Article 10, disciplinary criteria and interpretations, to reach his conclusion of no just cause and entitlement to compensation. Such analysis and conclusions did not draw their essence from the CBA.

The Arbitrator's decision reveals that his focus was under the provisions of Article 10, Discipline and Discharge, wherein disciplinary suspension with just cause is addressed. The Arbitrator found no just cause, because the result of the investigation was unfounded or inconclusive for abuse; and therefore, he deemed the suspension was 'reversed'. He then held, "That is exactly how a just cause provision is interpreted when discipline is reversed or overturned and the employer is required to make the employee whole for all losses." (ECF No. 16-4 at p. 4). The language of the CBA does not support this premise. Further, as mentioned above, 'just cause' is not defined within the CBA. Just cause appears in Article 3, when discussing Management Rights, and in Article 10, Discipline and Discharge. Here, McGuire exercised its management rights to interpret and determine the means to comply with governmental regulations. Therefore, in light of the report of abuse, the Arbitrator's just cause analysis should have focused upon the notice and mandated separation and investigation, invoking the CBA Management Rights (Article 3) and not Discipline and Discharge (Article 10), as there was never any disciplinary suspension taken against this employee.

Further, while the CBA has extensive provisions for contractual rights and responsibilities over compensation for employees in various circumstances, the CBA is silent as to compensation for employees who are suspended under Article 3 due to governmental regulations and investigations. Here, McGuire paid Ms. DeMatteo for her scheduled regular shifts during her suspension once the investigation reported an inconclusive result. Such payment was not contractually required under the terms of the CBA. The Arbitrator concluded that the overtime scheduled shifts were due to her, because such is the interpretation of 'a just cause provision' when discipline is reversed or overturned and the Employer is required to make the

employee whole for all losses. In addition to there having been no discipline and no reversal of any discipline in this case to support the Arbitrator's conclusion of no just cause, there is no express provision within the CBA to provide for any "make whole remedy" as applied by the Arbitrator in the circumstances of this case. Therefore, the Arbitrator's decisions are not rationally derived from the essence of the CBA.

Accordingly, Teamster's Motion to Dismiss will be denied.

IV. ORDER

Following consideration of the foregoing, it is hereby ordered that McGuire's Motion for Remand is denied, and Teamster's Motion to Dismiss is Denied. The Court will schedule an initial case management conference in light of Teamster's Answer and Counterclaim and McGuire's Answer.

DATED this 27th day of August, 2025.

BY THE COURT:

MARILYN J. HORAN
United States District Judge